```
 1  Julie Pesanti Sampson
    Registered Professional Reporter
 2  PO Box 7496
    Great Falls, Montana  59406-7496
 3  Phone:  (406) 498-3941
    Email:  fortherecord3@charter.net
 4
    United States Official Court Reporter
 5  _____

 6            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MONTANA
 7                   GREAT FALLS DIVISION

 8
    UNITED STATES OF AMERICA,      )
 9                                 )
                        Plaintiff, )    CR-16-09-GF-BMM
10                                 )
      versus                       )
11                                 )
    CHERYL LYNN LITTLE DOG,        )
12                                 )
                        Defendant. )
13  _____

14                  **TRANSCRIPT OF PROCEEDINGS**

15                        **ARRAIGNMENT**

16
           **BEFORE THE HONORABLE JOHN T. JOHNSTON**
17      **UNITED STATES DISTRICT COURT MAGISTRATE JUDGE**
                 **FOR THE DISTRICT OF MONTANA**
18
                   Chief Mountain Courtroom
19              Missouri River Federal Courthouse
             United States District Court Great Falls
20                   125 Central Avenue West
                      Great Falls, MT 59404
21
                        **March 8, 2016**
22                        **10:30 a.m.**

23

24
              Proceedings recorded by machine shorthand
25     Transcript produced by computer-assisted transcription
```

```
 1                    APPEARANCE OF COUNSEL:

 2

     For the Plaintiff:
 3
     Mr. Ryan G. Weldon
 4   Assistant United States Attorney
     United States Attorney's Office - Great Falls
 5   P.O. Box 3447
     119 First Avenue North, Suite 300
 6   Great Falls, MT 59403
     (406) 761-7715 (Phone)
 7   (406) 453-9973 (Fax)
     Email: Ryan.Weldon@usdoj.gov
 8

 9   For the Defendant:

10   Ms. Roberta Cross Guns
     Attorney at Law
11   P.O. Box 105
     Ulm, Montana 59485
12   (406) 459-9550 (Phone)
     (406) 459-9550 (Fax)
13   Email: rcrossguns@gmail.com

14

15

16

17

18

19

20

21

22

23

24

25
```

|    | **PROCEEDINGS** |
|---:|---|
| 1  | |
| 2  | (Open court) |
| 3  | (Defendant present) |
| 4  | (Proceedings began at 10:59 a.m.) |
| 5  |       CLERK OF COURT:  This Court will now conduct an |
| 6  | arraignment in Criminal 16-09 of the Great Falls Division, |
| 7  | Judge Morris, United States of America versus Cheryl Lynn |
| 8  | Little Dog. |
| 9  |       THE COURT:  Good morning.  How are you? |
| 10 |       MS. CROSS GUNS:  I'm great.  Good to see you. |
| 11 |       THE COURT:  Yeah, it's nice to see you, too. |
| 12 |       MS. CROSS GUNS:  Kind of a step up. |
| 13 |       THE COURT:  What's that? |
| 14 |       MS. CROSS GUNS:  Kind of a step up from Butte, |
| 15 | Montana. |
| 16 |       THE COURT:  (Laughing) |
| 17 | Good morning, ma'am. |
| 18 |       THE DEFENDANT:  Good morning. |
| 19 |       THE COURT:  Would you please state your full name |
| 20 | for the record into the microphone? |
| 21 |       THE DEFENDANT:  Cheryl Lynn Little Dog. |
| 22 |       THE COURT:  Ms. Little Dog, my name is John |
| 23 | Johnston, and I'm a United States Magistrate Judge, and I'll |
| 24 | be presiding over your arraignment today.  Do you understand |
| 25 | who I am? |

```
 1              THE DEFENDANT:  Yes.
 2              THE COURT:  You have the right to be represented by
 3    an attorney, and you've retained --
 4              MS. CROSS GUNS:  Roberta Cross Guns, Your Honor.
 5              THE COURT:  -- Ms. Cross Guns to be your attorney.
 6    Is that right?
 7              THE DEFENDANT:  Yes.
 8              THE COURT:  It's important for you to know that the
 9    only way that Ms. Cross Guns can effectively represent your
10    interests is if you fully communicate with her about the
11    situation that brings you to court today.
12              MS. CROSS GUNS:  (Nods head affirmatively)
13              THE COURT:  In order to allow that communication to
14    happen, none of the communications between you and Ms. Cross
15    Guns can be used against you.  Do you understand that?
16              THE DEFENDANT:  Yes.
17              THE COURT:  That means you can talk to her freely
18    and nothing you say to her can ever be used against you in
19    this trial.  Do you understand that?
20              THE DEFENDANT:  Yes.
21              THE COURT:  On the other hand, communications that
22    you have with anybody else -- and that means anybody else,
23    and it includes members of law enforcement -- those
24    communications can be used against you.  And, many times,
25    those sorts of communications are used against a defendant in
```

```
 1  a criminal proceeding.  Do you understand that?
 2              THE DEFENDANT:  Yes.
 3              THE COURT:  All right.  So, statements that you
 4  make to neighbors, relatives, friends, policemen, all of
 5  those sorts of things can be admitted as evidence against
 6  you.  Do you understand that?
 7              THE DEFENDANT:  Yes.  (Nods head affirmatively)
 8              THE COURT:  All right.  The reason you're in court
 9  today is a United States grand jury has handed down an
10  Indictment charging you with committing two federal felonies.
11       An Indictment is an accusation, only.  It's just a
12  document that let's you know what crimes the government
13  claims you committed.  It's not evidence of any actual
14  wrongdoing.  Do you understand that?
15              THE DEFENDANT:  Yes.
16              THE COURT:  It's also important for you to know
17  that the only way you can be found guilty of the charges set
18  forth in the Indictment is if the United States government
19  proves you guilty beyond a reasonable doubt.  Do you
20  understand that, as well?
21              THE DEFENDANT:  (Nods head affirmatively)  Yes.
22              THE COURT:  Have you seen the Indictment that
23  brings you to court today?
24              THE DEFENDANT:  Uh-huh.
25              THE COURT:  Is that a yes?
```

```
 1              THE DEFENDANT:  Yes.
 2              MS. CROSS GUNS:  She received a summons with the
 3   Information.
 4              THE COURT:  With the Indictment in it.
 5              MS. CROSS GUNS:  Yes, the Indictment.
 6              THE COURT:  All right.  And do you understand what
 7   crimes the Indictment charges you with committing?
 8              THE DEFENDANT:  Yes.  (Nods head affirmatively)
 9              THE COURT:  Assistant United States Attorney Ryan
10   Weldon is seated behind you, would you like to have him read
11   the Indictment in open court at this time?
12              MS. CROSS GUNS:  (Shakes head negatively)  No.
13              THE DEFENDANT:  No.
14              THE COURT:  All right.  Thank you very much.  I'm
15   required to go over the maximum potential penalties that you
16   are facing, so that you understand what the worst possible
17   scenario or consequences are for you, and I'm going to do
18   that at this time.
19         In Count I of the Indictment, you are charged with
20   committing the federal felony of harboring a fugitive, in
21   violation of Title 18, United States Code Section 1071.
22         If you were convicted of this crime, the maximum
23   penalties you are facing include five years' imprisonment, a
24   $250,000 fine, and three years of supervised release.
25              In Count II of the Indictment, you're charged with
```

1  committing the federal felony of false statements to federal
2  law enforcement, in violation of Title 18, United States Code
3  Section 1001(a)(2).  If you're convicted of committing this
4  crime, the maximum penalties that you are facing include five
5  years' imprisonment, a $250,000 fine, and three years of
6  supervised release.
7       So, ma'am, do you understand the maximum penalties that
8  you are facing in relation to each of the charges against
9  you?
10            THE DEFENDANT:  Yes, I do.
11            THE COURT:  Thank you very much.  I'm required to
12 go over the basic rights that you have in relation to the
13 charges against you, and I'm going to do that now.
14      First of all, you are presumed, under the law, to be
15 innocent of the charges.
16      Second, before you can be found guilty of committing any
17 crime, the government is required to prove every element of
18 any crime that it claims you committed beyond a reasonable
19 doubt.
20      Number three, you have the right to a public and speedy
21 trial.
22      Number four, you have the right to confront any witness
23 that the government calls to testify against you.  That means
24 your attorney will be allowed the right to fully cross
25 examine any witness the government calls to testify.

1       Number five, you have the right to call witnesses to
2  testify on your behalf.
3       Number six, you have a right to testify on your own
4  behalf.
5       And, number seven, you have a right to remain silent.
6  If you choose to exercise this right and decided not to
7  testify before the jury that would be deciding your case, the
8  district court judge would instruct the jury that your
9  silence is not evidence that you are guilty of anything.
10      So, do you understand your basic rights, ma'am?
11           THE DEFENDANT:  Yes.  (Nods head affirmatively)
12           THE COURT:  Having gone through the charges against
13 you, the maximum penalties that you are facing in relation to
14 each of the charges, and the basic rights that you have in
15 relation to the charges, are you prepared to enter a plea to
16 the charges against you?
17           MS. CROSS GUNS:  (Nods head affirmatively)
18           THE DEFENDANT:  Yes.
19           THE COURT:  And how do you plead to the charges
20 against you?
21           THE DEFENDANT:  Not guilty.
22           THE COURT:  Thank you very much.  I'll enter not
23 guilty pleas to the charges against you.  United States
24 District Court Judge Brian Morris will be presiding over your
25 trial.  He will be sending out an order in the near future

1  setting your trial date and various pretrial deadlines.  That
2  order will be communicated to Ms. Cross Guns, and then she'll
3  let you know what your trial date is, as well as the various
4  pretrial deadlines.  Do you understand that?
5              THE DEFENDANT:  Yes.
6              THE COURT:  And, Mr. Weldon, Ms. Little Dog is here
7  on a summons, as well; is that correct?
8              MR. WELDON:  Yes, she is, Your Honor.
9              THE COURT:  So, what's the government's position on
10 the detention of Ms. Little Dog?
11             MR. WELDON:  Your Honor, at this time, the
12 government is not moving for detention.  I believe that Ms.
13 Cross Guns has a proposed order for the Court.
14             MS. CROSS GUNS:  I do.
15             MR. WELDON:  The only thing that I did want to make
16 the Court aware of is that our office, as well at the FBI and
17 the Marshals Service, has received various -- information
18 about Ms. Little Dog contacting other individuals, and that
19 it was done in a threatening nature.
20      Now, I do not want to have to go down the obstruction of
21 justice road; but if we have to, we will, and I wanted to
22 makes sure that Ms. Little Dog was well-aware of that.  I
23 know that the Court --
24             THE DEFENDANT:  (Nods head affirmatively)
25             MR. WELDON:  -- will advise Ms. Little Dog of that.

1  But that is something that is important, for the government
2  to make sure that the Court is aware of that.
3           THE COURT:  Well, thank you very much.
4       And you may approach.
5           MS. CROSS GUNS:  Thank you, Your Honor.
6           THE COURT:  (Viewing documents)  Ms. Little Dog, I
7  have an order setting conditions of release in front of me.
8  I have signed the order.  And on Page 3, there is a signature
9  line that says, "Defendant's signature," and is that your
10 signature on that line?
11          THE DEFENDANT:  Yes.
12          THE COURT:  And you live in East Glacier, Montana;
13 is that correct?
14          THE DEFENDANT:  Yes.
15          THE COURT:  So, I've signed the order, which means
16 that you will be released after processing.  So, the marshals
17 are going to process you.  And you need to go talk to the
18 United States Probation Office before you leave the building,
19 Ms. Hedges over there.  She needs to make sure that she has
20 all of your updated information.  Do you understand that?
21          THE DEFENDANT:  Yes.  (Nods head affirmatively)
22          THE COURT:  There are serious implications to you
23 if you violate the order setting conditions of release.
24 Under 7(g), which is on Page 2, this condition is marked,
25 "Shall not harass, threaten, intimidate, tamper with,

1  improperly influence, or injure witnesses, jurors,
2  informants, or victims of the offense charged."
3      So, do you understand that you can't be intimidating
4  witnesses, threatening witnesses, making threatening phone
5  calls?  You can't have somebody else threaten somebody for
6  you.  Do you understand that?
7          THE DEFENDANT:  Yes.
8          THE COURT:  And you heard Mr. Weldon say that he
9  doesn't want to go down the path of --
10         THE DEFENDANT:  Yes.
11         THE COURT:  -- potentially bringing charges against
12 you for obstruction of justice, but I can tell you that he
13 will, if you do.
14         THE DEFENDANT:  Uh-huh.
15         THE COURT:  Do you understand that?
16         THE DEFENDANT:  Yes.
17         THE COURT:  And then the problem is, then, you'll
18 be in front of me again, only it will be on an obstruction of
19 justice charge, and I certainly don't want that to happen to
20 you.  Do you understand that?
21         THE DEFENDANT:  Yes.
22         THE COURT:  But that's totally under your control.
23 So, abide by that condition.  Do you understand that?
24         THE DEFENDANT:  Yes.
25         THE COURT:  Okay.  Not only would violating that

1    condition be potentially a federal felony, and, of course,
2    you would be indicted, but it would be a violation of this
3    release order.  And that means, even without indicting you or
4    attempting to indict you on a new crime, the government could
5    bring you back in here saying that she is violating the order
6    by threatening people or having other people threaten for
7    her, and that's a violation of the release order.
8         Which means, if it was true, that you would be detained
9    in jail pending further proceedings, rather than residing in
10   your own home, where I'm sure you would rather be.  Is that
11   correct?
12             THE DEFENDANT:  Yeah.
13             THE COURT:  Is that yes?
14             THE DEFENDANT:  (Shrugs shoulders)  Yes.
15             THE COURT:  There is other conditions of the
16   release on Page 1; and it's important for you to know that if
17   you violate any of the conditions of release, then the
18   government will just -- typically will then have the U.S.
19   Marshals go arrest you, bring you back in front of the Court,
20   and request that I throw you in jail pending further
21   proceedings rather than allowing you to be at home.  Do you
22   understand that?
23             THE DEFENDANT:  Yes.
24             THE COURT:  If you attempt to flee, that's bail
25   jumping.  And that's a federal crime, and it's also a

1    violation of this release order.  Do you understand that?
2              THE DEFENDANT:  Yes.
3              THE COURT:  This is important for you to know,
4    because this happens more often than I'd like to see, but
5    this frequently happens, if you commit a state, local, or a
6    federal crime while you're on pretrial release, that's a
7    felony by itself, doing that, and it's also a violation of
8    your conditions of release.  Do you understand that?
9              THE DEFENDANT:  Yes.
10             THE COURT:  All right.  Do you have any questions
11   about the release order?
12             THE DEFENDANT:  No, sir.
13             THE COURT:  All right.  And I don't know, were you
14   sitting here when I talked to the last lady before she left?
15             THE DEFENDANT:  Yeah.
16             THE COURT:  Everybody is always nice and contrite
17   at this point in time, and many times, by the time they hit
18   the street and they are on their way back to where they are
19   going, they are already violating the conditions of release,
20   because they just can't stand it.  Okay?
21             THE DEFENDANT:  (Nods head affirmatively)
22             THE COURT:  So, if that happens, you are going to
23   be back in front of me, and you are going to go to jail.
24   Right?
25             THE DEFENDANT:  Yes.

```
 1                THE COURT:  All right.  I don't just want any
 2   misunderstanding.  Because if you do come back in front of
 3   me, and you go to jail, that's on you, and not me.  You got
 4   it?
 5                THE DEFENDANT:  Yeah.
 6                THE COURT:  All right.  Anything further from the
 7   defense?
 8                MS. CROSS GUNS:  Nothing, Your Honor.  Thank you.
 9                THE COURT:  Mr. Weldon, anything further from the
10   government?
11                MR. WELDON:  No, Your Honor.  Thank you.
12                THE COURT:  Thank you very much.  Good luck.
13   (Proceedings concluded at 11:10 a.m.)
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                          CERTIFICATE
 2
 3      I, Julie L. Sampson, certify that the foregoing is a
 4   correct transcript from the record of proceedings in the
 5   above-entitled matter to the best of my knowledge, skill, and
 6   ability.
 7
 8
     /s/ Julie L. Sampson                    04/11/2017
 9   Julie L. Sampson                        Date
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```